UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CASE NO.

**MAURIN GUIDRY, JR.** **16-11584**
SECTION A
DEBTOR CHAPTER 13

### REASONS FOR DECISION

The Objection to Claim of Harley-Davidson Financial ("Harley") and Motion for Sanctions[1] came before the Court on October 25, 2016. The Court directed the parties to file briefs no later than November 11, 2016. Upon filing of the briefs,[2] the Court took the matter under advisement. The parties agreed that the Court should hold its decision due to an identical legal question pending before the United States Supreme Court. Once the Supreme Court ruled, the parties submitted additional briefs.

**I. Findings of Fact**

On January 3, 2002, Maurin Guidry, Jr. ("Debtor") purchased a 2003 Harley-Davidson ("Motorcycle"), signing a promissory note for the purchase price and granting a lien on the Motorcycle.[3]

---

[1] P-18.

[2] P-47, 48.

[3] To perfect a security interest in a motor vehicle, the creditor must file a financing statement with the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles. La. R.S. 10:9-501.

> A filed financing statement with the Louisiana Department of Public Safety and Corrections, office of motor vehicles, covering a titled motor vehicle not held as inventory for sale or lease is effective until a termination statement is filed.

La. R.S. 10:9-515(h). The lienholder on the Motorcycle's Certificate of Title is "ESB AND/OR ITS ASSIGNS." The parties do not dispute that Harley was the lienholder at the time of the

On October 14, 2005, Debtor filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code ("2005 Case").[4] He listed the Motorcycle on his Schedule of Assets with a value of $5,000.00 and Harley as a secured creditor with a claim of $8,973.00.[5] Debtor also stated an intention to surrender the Motorcycle to Harley.

The Chapter 7 Trustee disclaimed and abandoned the estate's rights in the Motorcycle as being encumbered in excess of its value and, thus, not having sufficient equity to justify administration.[6] Debtor was granted a discharge on February 21, 2006.[7]

On July 2, 2016, Debtor filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code ("Present Case"). Debtor neither listed the Motorcycle in his Schedule of Assets nor did he list Harley as a creditor.[8]

On July 12, 2016, Harley timely[9] filed Proof of Claim 2-1 ("Claim 2-1") for the secured amount of $9,302.99, and then on July 25, 2016, Harley filed amended Proof of Claim 2-2 ("Claim 2-2") in the secured amount of $3,460.00 (collectively "Harley's Claims").

---

2005 Case. There is no allegation that Harley filed a termination statement.

[4] Case 05-20358.

[5] *Id.* at P-1.

[6] *Id.* at P-12, 13.

[7] *Id.* at P-15.

[8] P-1.

[9] The last day to file proofs of claims was November 8, 2016, and Harley filed its claim on July 12, 2016.

2

Debtor's Amended Plan of Reorganization ("Plan") was confirmed on August 31, 2016.[10] The Plan provides for the surrender of the Motorcycle, subject to this Motion for Sanctions.[11]

Debtor filed an Objection to Harley's Claims and requested that Harley be sanctioned for violation of the discharge injunction pursuant to 11 U.S.C. § 524 and the Fair Debt Collection Practices Act ("FDCPA").[12] Debtor alleges that the debt to Harley was discharged in the 2005 Case, and it has prescribed due to five (5) years without payment. Debtor claims that he surrendered the Motorcycle, left it at his previous residence, and tendered the license plate to the Office of Motor Vehicles ("OMV"). The OMV indicates the Motorcycle's vehicle identification number ("VIN") does not have current registration.

Harley maintains that it did not receive the Motorcycle and, therefore, has an *in rem* claim. As a result, the filing of a secured proof of claim did not violate 11 U.S.C. § 524. Further, Harley argues that the Bankruptcy Code supercedes the FDCPA, so no violation of its requirements is applicable. Harley asserts that even if the FDCPA does remain germane, no violation occurred.

## II. Law and Analysis

### A. Did Harley Violate the Discharge Injunction?

Section 524(a)(2) provides that a bankruptcy discharge:

> ...operates as an injunction against the commencement or continuation of action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

---

[10] P-36.

[11] P-30.

[12] 15 U.S.C. § 1692e.

3

Thus, "a bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - while leaving intact another - namely, an action against the debtor *in rem*."[13] The question then arises whether the *in rem* action is a claim in a subsequent bankruptcy case.

In *Johnson v. Home State Bank*,[14] the debtor signed a promissory note and mortgage in favor of Home State Bank ("Bank") secured by real property. The debtor defaulted, and the Bank instituted foreclosure proceedings. The debtor filed a Voluntary Petition for Relief under Chapter 7 and received a discharge. The Bank was granted relief from the automatic stay and continued foreclosure proceedings. Prior to the foreclosure, the debtor filed a Voluntary Petition for Relief under Chapter 13. The debtor listed the Bank in its schedules and proposed to pay the Bank through his Chapter 13 plan. The Bankruptcy Court confirmed the plan, and the Bank appealed arguing that it was improper to include its *in rem* claim in the Chapter 13 plan. The District Court agreed, and the Court of Appeals affirmed.

The Supreme Court found that although the debtor's personal liability was discharged, the *in rem* liability and the creditor's right to foreclose survived. The Court also found that "a surviving mortgage interest is a 'claim' under § 101(5)."[15]

> The conclusion that a surviving mortgage interest is a "claim" under § 101(5) is consistent with other parts of the Code. Section 502(b)(1), for example, states that the bankruptcy court "shall determine the amount of [a disputed] claim ... and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor *and property of the debtor*" (emphasis added). In

---

[13] *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154 (1991).

[14] *Id.*

[15] *Id.* at 85.

other words, the court must allow the claim if it is enforceable against *either* the debtor *or* his property. Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property. Similarly, § 101(2) establishes, as a "[r]ul[e] of construction," that the phrase "'claim against the debtor included claim against property of the debtor." A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.[16]

Similarly, the Fifth Circuit has held:

> 11 U.S.C. § 524 does not prevent creditors from postdischarge enforcement of a valid lien that existed at the time of entry of the discharge injunction, if the lien was not avoided under the Bankruptcy Code.[17]

Harley's lien was not avoided in the 2005 Case. Therefore, the *in rem* liability survived. Debtor argues that Harley was willfully attempting to collect a discharged debt. Because under these circumstances Harley's *in rem* claim was not subject to discharge, an attempt to collect an *in rem* debt does not violate the discharge injunction.

Harley filed Claim 2-1 for the secured amount of $9,302.99 and then filed amended Claim 2-2 in the secured amount of $3,460.00. Debtor argues that Claim 2-1 violated the discharge injunction because it is for an amount in excess of the value of the Motorcycle. Harley contends that as soon as Debtor notified it of the discharge, it amended its claim to reflect the value of the Motorcycle. Harley maintains that the value of the Motorcycle is $3,460.00 based on the NADA

---

[16] *Id.*

[17] *In re Gervin*, 300 Fed.Appx. 293, 302-03 (5th Cir. 2008) (citing Collier on Bankruptcy ¶ 524.02[2][d] (15th ed. 2007)).

5

Guidelines.[18] Debtor disputes the value arguing that Harley cannot value a Motorcycle that it has not seen in ten (10) years. Debtor offered no evidence of value.

Harley violated the discharge injunction by attempting to collect an amount in excess of its *in rem* claim. Harley did not indicate on Claim 2-1 that the claim was *in rem* nor did it limit the claim to the value of the property. As compensation for this violation, Debtor seeks to recover actual and punitive damages as well as reasonable legal fees and expenses. Debtor asks that the amount of damages be determined by the Court at a later date.

> Though the injunction is statutory in nature, its effect is equivalent to that of a court order. *In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (S.D.Tex. [2011]) *aff'd sub nom. In re Am. Rice*, 448 Fed.Appx. 415 (5th Cir. 2011). Accordingly, the consequences for violating the discharge injunction are identical to the consequences attending to violating a court order, namely, civil contempt. [4 Collier on Bankruptcy, ¶ 524.02[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).]
>
> Section 524 does not specifically address awarding monetary relief for violations of the discharge injunction, but courts have fashioned such relief through their inherent contempt power and statutory authority under § 105. *In re Richtey*, 512 B.R. 847, 860 (Bankr.S.D.Tex. 2014). For willful violations of the discharge injunction, courts have awarded actual damages, emotional distress damages, and attorney's fees. In order to support finding a willful violation of § 524(a)(2), the offending creditor must "(1) know the injunction has been entered, and (2) intend[ ] the actions that violate it." *In re Contreras*, 2007 WL 273128, at *1 (Bankr.S.D.Tex. Jan 26, 2007). Punitive damages may also be awarded in certain situations. Collier at ¶ 524.02[2][c].[19]

Harley was a claimant in the 2005 Case. It was scheduled as a secured creditor, noticed of Debtor's filing, plan contents, intention to surrender, plan confirmation, and discharge. As such, Harley knew that any personal liability owed by Debtor to it was discharged long ago.

---

[18] P-42, Exh. B.

[19] *Fauser v. Green Tree Servicing, L.L.C. (In re Fauser)*, 545 B.R. 907, 912-913 (Bankr.S.D.Tex. 2016).

Generally, a proof of claim is *prima facie* evidence of the creditor's position and account.[20] For this reason, it is incumbent on a creditor to accurately disclose the nature and extent of its position *vis a vis* the estate.[21] Only then can the Chapter 13 Trustee, debtor, creditor, or bankruptcy court adequately access the offered treatment under a proposed plan. When Harley filed its Claim 2-1, it claimed a secured debt of $9,302.00. Not only was this in excess of Harley's estimated value for the Motorcycle ($3,460.00), Claim 2-1 failed to indicate that the debt was limited to the value of its collateral. Failure to properly disclose material details of the debtor/creditor relationship may cause an undue burden on the estate in the form of objections to plan confirmation or claims.

In this case, Harley's initial claim indicated a secured debt in excess of $9,000.00. This caused Debtor's counsel time to both research the validity of the claim, contact Harley, and advise them of the prior discharge. That communication resulted in the amendment of Claim 2-1 by filing Claim 2-2 for Harley's estimation of the Motorcycle's value.

Actual damages may be awarded for willful violation of the discharge injunction.[22] Jurisprudence related to damages for violation of the automatic stay has been analogized to

---

[20] 11 U.S.C. § 502(a); F.R.B.P. 3001(f).

[21] Proofs of claim are signed under penalty of perjury and fraudulent claims carry a penalty of up to $500,000.00 and imprisonment for up to five (5) years. Official Form 410.

[22] *Id*. at 913.

discharge injunction violations.[23] The Fifth Circuit has held that a violation of the automatic stay is "willful" when it is done intentionally with knowledge of the stay.[24]

The Fifth Circuit has not addressed the standard for awarding punitive damages for violation of the discharge injunction. However, analogy can be made to punitive damages for automatic stay violations for which the Fifth Circuit requires "egregious conduct."[25] In *In re Repine*, the Fifth Circuit awarded punitive damages for violation of the automatic stay when the creditor ignored notice of the automatic stay and continued collection efforts.

In the case at bar, Harley amended its claim as soon as it was warned of the discharge injunction. Therefore, the Court finds that Harley's conduct was not egregious and will not award punitive damages. It will, however, award damages for Debtor's counsel's time and effort to research Harley's Claims and contact Harley's counsel.

### B. Was the *In Rem* Debt to Harley Prescribed?

Debtor contends that Harley no longer has a lien because the debt prescribed pursuant to La. C.C. Art. 3498. La. C.C. Art. 3498 provides that actions on promissory notes are subject to liberative prescription of five (5) years. Harley, on the other hand, contends that the ten (10) year prescriptive period for personal actions pursuant to La. C.C. Art. 3499 is applicable.

---

[23] *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1390 (11 th Cir. 1996).

[24] *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008).

[25] *Young v. Repine (In re Repine)*, 536 F.3d 512, 521 (5th Cir. 2008).

Louisiana jurisprudence is clear that actions on promissory notes, including those for the purchase of vehicles, are subject to a liberative prescription of five (5) years.[26] "Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."[27] The act of surrendering a vehicle is acknowledgment of the debt.[28]

11 U.S.C. § 521(a)(2) requires a Chapter 7 debtor to 1) file a statement of intention to retain or surrender secured property within 30 days of the petition date; and 2) perform that intention within 30 days of the § 341 meeting of creditors. In the 2005 Case, Debtor filed a Statement of Intention to surrender the Motorcycle.

A debtor's responsibility when surrendering a vehicle is to make it available to the creditor; he does not have to deliver it to the creditor.[29] The creditor is not obligated to take ownership of the surrendered collateral.[30]

---

[26] La. C.C. Art. 3498; *Autovest, L.L.C. v. Nash*, 50,725 (La.App. 2 Cir. 6/22/16), 197 So.3d 258, 263.

[27] La. C.C. Art. 3464.

[28] *Autovest, L.L.C. v. Nash*, 197 So.2d at 264.

[29] 4-521 Collier on Bankruptcy ¶ 521.14 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (citation omitted).

[30] *In re Arsenault*, 456 B.R. 627, 629 (Bankr.S.D.Ga. 2011).

> Though the [Bankruptcy] Code provides debtors with the surrender option, it does not force creditors to assume ownership or take possession of collateral. And although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property.

*In re Thomas*, 554 B.R. 512, 521 (Bankr.M.D.Ala. 2016) (quoting *In re Canning*, 442 B.R. 165, 172 (Bankr.D.Maine 2011)).

Debtor made the Motorcycle available for Harley to pick up by leaving it at his previous residence. Therefore, prescription began to run when Debtor surrendered the Motorcycle in 2005, and the claim prescribed five (5) years later in 2010.[31]

> A security agreement is an accessory obligation to the promissory note:
>
> A contract is accessory when it is made to provide security for the performance of an obligation. Suretyship, mortgage, pledge, and other types of security agreements are examples of such a contract.
>
> When the secured obligation arises from a contract, either between the same or other parties, that contract is the principal contract.[32]

Thus, Harley's lien is accessory to the promissory note.

> If the principal or secured obligation is satisfied, the accessory obligation to provide security for that principal obligation is by its very nature extinguished. An accessory obligation may not exist without the coexistence of the principal obligation to which it lends support. Therefore, the extinction of the principal obligation simultaneously extinguishes the accessory or security obligation.[33]

Because the principal debt prescribed, Harley's lien has been extinguished. A creditor must have a lien on the property to pursue *in rem* relief.[34] Therefore, Harley has no claim in the Present Case.

---

[31] *See Autovest, L.L.C. v. Nash, supra* note 17.

[32] La. C.C. Art. 1913.

[33] *Fairfield Development Co. v. Jackson*, 438 So.2d 664, 667 (La.App. 2 Cir. 1983) (citations omitted).

[34] *In re Loe*, 2013 WL 6628960, *7 (Bankr.N.D.Tex. 2013).

**C. Did Harley Violate the FDCPA by Filing a Proof of Claim for a Prescribed Debt?**

Debtor contends that filing a prescribed claim violates the FDCPA, which prohibits:

> [A] debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including falsely representing "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A). The FDCPA also prohibits debt collectors from using unfair or unconscionable means of collecting a debt. *Id.* § 1692f.[35]

In order for a Court to rule that a violation of the FDCPA occurred, it must find:

> (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.[36]

The United States Supreme Court in *Midland Funding, L.L.C. v. Johnson* recently entered a ruling on whether the FDCPA applied to time barred proofs of claim.[37] Section 101(5)(A) provides that a "claim" is a "right to payment." Whether an entity holds a right to payment is determined by state law.[38] The relevant law in *Midland* was Alabama law, which "provides that a creditor has the right to payment of a debt even after the limitations period has expired."[39]

The Supreme Court found that a "claim" under the Bankruptcy Code does not mean "enforceable claim." Section 502(b)(1) of the Bankruptcy Code contemplates the disallowance of

---

[35] *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3rd Cir. 2011).

[36] *Robinson v. JH Portfolio Debt Equities, L.L.C. (In re Robinson),* 554 B.R. 800, 811 (Bankr.W.D.La. 2016) (quoting *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D.Md. 2012)).

[37] *Midland Funding, L.L.C. v. Johnson*, 137 S.Ct. 1407 (2017).

[38] *Id.* at 1411.

[39] *Id.* (citation omitted).

"unenforceable" claims and "treats untimeliness as an affirmative defense."[40] A Chapter 13 Trustee will have the sophistication to understand that claims are subject to disallowance and will not be mislead by the filing of a time barred claim.[41] The Supreme Court also held that filing a proof of claim for a time barred debt is not "unfair" or "unconscionable."[42]

The Supreme Court found that the FDCPA and the Bankruptcy Code "have different purposes and structural features."[43]

> The [FDCPA] seeks to help consumers, not necessarily by closing what Johnson and the United States characterize as a loophole in the Bankruptcy Code, but by preventing consumer bankruptcies in the first place. ... The Bankruptcy Code, by way of contrast, creates and maintains what we have called "the delicate balance of a debtor's protections and obligations."
>
> To find the [FDCPA] applicable here would upset that "delicate balance." From a substantive perspective it would authorize a new significant bankruptcy-related remedy in the absence of language in the [Bankruptcy] Code providing for it. Administratively, it would permit postbankruptcy litigation in an ordinary civil court concerning a creditor's state of mind - a matter often hard to determine. ... Procedurally, it would require creditors (who assert a claim) to investigate the merits of an affirmative defense (typically the debtor's job to assert and prove) lest the creditor later be found to have known the claim was untimely.[44]

---

[40] *Id.* at 1414.

[41] *Id.* at 1413.

[42] *Id.* at 1415.

[43] *Id.* at 1414.

[44] *Id.* at 1414-1415 (citations omitted).

The Supreme Court noted that the Advisory Committee on Rules of Bankruptcy Procedure "specifically rejected a proposal that would have required a creditor to certify that there is no valid statute of limitations defense."[45]

The Supreme Court held:

> [W]e conclude that filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred in not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the [FDCPA].[46]

In the case at bar, Louisiana law is similar to Alabama law in that the right to payment of a debt continues after the debt is time barred. Under Louisiana Law, a prescribed debt is a "natural obligation."[47] "A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance."[48] "A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed."[49] Thus, a Louisiana creditor has a right to payment after the debt has prescribed and, therefore, has a claim under the Bankruptcy Code.

---

[45] *Id*. at 1415 (citation omitted).

[46] *Midland Funding, L.L.C. v. Johnson*, 137 S.Ct. 1407 (2017).

[47] La. C.C. Art. 1762 provides:

Examples of circumstances giving rise to a natural obligation are:

> (1) When a civil obligation has been extinguished by prescription or discharged in bankruptcy. ...

[48] La. C.C. Art. 1760.

[49] La. C.C. Art. 1761.

Exhibit A of Claim 2-1 shows that the total arrearage of $9,302.99 is for "Regular Monthly Installments Through Maturity Date of January 8, 2009." Debtor is well aware that he has not made any payments since he surrendered the Motorcycle in 2005. As a result, he was also readily able to calculate that Harley's claim prescribed in 2010. Therefore, Claim 2-1 shows on its face that the claim is prescribed.

Claim 2-2 reduced the total debt to $3,460.00 but also provides that the amount is for "Regular Monthly Installments Through Maturity Date of January 8, 2009." Therefore, Claim 2-2 shows on its face that the claim is prescribed.

Even were it not clear from Harley's Claims that they were prescribed, the Supreme Court's holding that to make the FDCPA applicable in a Bankruptcy case "would upset the 'delicate balance'" between the two forecloses this cause of action.

### III. Conclusion

Debtor's Motion for Sanctions will be granted in part and denied in part. Harley violated the discharge injunction by initially claiming an amount in excess of the value of the Motorcycle and by failing to limit its claim to the collateral. Debtor will be awarded actual damages and attorney's fees and costs which will be awarded by subsequent Order. Debtor's counsel will file a detailed Affidavit of Costs and Fees expended no later than fifteen (15) days from the entry of these Reasons. Objection to the fees or costs expended shall be filed by Harley no later than fifteen (15) days from the filing of the Affidavit of Costs and Fees. The Court will schedule a hearing if necessary.

Harley's *in rem* claim is prescribed. Harley did not violate the FDCPA by filing a claim based on a prescribed debt.

The Debtor's Objection to Harley's Claims is sustained. The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, July 21, 2017.

Hon. Elizabeth W. Magner<br>
U.S. Bankruptcy Judge